UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONELL KOEPPEN,<br><br>    Plaintiff,<br><br>v.<br><br>CARVANA, LLC,<br><br>    Defendant. | Case No. 21-cv-01951-TSH<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 40 |

## I.   INTRODUCTION

Before the Court is Plaintiff Ronell Koeppen's unopposed motion for preliminary approval of class action settlement. ECF No. 40. The Court finds this matter suitable for disposition without oral argument and **VACATES** the May 9, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.   BACKGROUND

### A.   Complaint Allegations

Plaintiff worked as an hourly, nonexempt Customer Advocate for Defendant Carvana, LLC from approximately January to July 2020. First Am. Compl. ¶ 24, ECF No. 5-1. He seeks to represent a class defined as: "All current and former hourly-paid or non-exempt employees who worked for . . . Defendant[] within the State of California at any time during the period from December 16, 2016 to final judgment and who reside in California." *Id.* ¶ 12. Plaintiff's core allegations are that Defendant violated the California Labor Code and California Business and Professions Code by failing to properly pay minimum and overtime wages, failing to provide

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 11, 13.

compliant meal and rest periods or pay associated premiums, failing to timely pay wages during employment and upon termination and associated waiting time penalties, failing to provide compliant wage statements, and failing to reimburse necessary business-related expenses. *Id.* ¶¶ 23-52. Plaintiff also contends Defendant's conduct constitutes unfair business practices and gives rise to penalties under the Private Attorneys General Act, Cal. Lab. Code § 2698, et. seq. ("PAGA"). *Id.* ¶¶ 16-22. As a result, Plaintiff alleges he and the class members are entitled to unpaid wages, penalties and attorneys' fees. Defendant denies any liability associated with the claims and allegations and denies that Plaintiff or the class members are entitled to any relief.

**B.     Procedural History**

On December 16, 2020, Plaintiff filed his original complaint in the Superior Court of California for the County of Alameda, Case No. RG20084625. On February 22, 2021, he filed the operative First Amended Class Action Complaint, asserting 11 causes of action: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages not timely paid, (6) wages not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, (10) violation of Cal. Bus. & Prof. Code §§ 17200, et seq., and (11) violation of Cal. Lab. Code section 2698, California Labor Code Private Attorneys General Act of 2004 ("PAGA"). First Am. Compl. ¶¶ 53-139. Defendant removed the case to this Court on March 19, 2021.

On June 10, 2021, the parties notified the Court that they had agreed and scheduled a private mediation with mediator Jeffrey A. Ross to occur on February 14, 2022. ECF No. 13. The parties agreed to meet and confer regarding sufficient informal discovery in order to hold a fruitful mediation. As such, the Court continued the initial case management conference to March 10, 2022. ECF No. 14. On March 3, 2022, the parties notified the Court they had reached a class-wide settlement and contemplated it would take 120 days to finalize the settlement papers and move for preliminary settlement approval. ECF No. 16. The parties subsequently requested, and the Court granted, several extensions of the deadline to move for preliminary approval. ECF Nos. 17-19, 23-39. Plaintiff filed the present motion on November 30, 2023.

**C.     Settlement Terms**

    **1.     The Class**

For settlement purposes only, the parties agree to class action certification of the following class (individually referred to as "Class Members") consisting of an estimate of approximately 1,224 individuals: "All current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time from December 16, 2016 to Preliminary Approval." Mot. at 3; Blanchard Decl., Ex. 1 (Settlement Agreement) ¶ 5, ECF No. 40-1. The period from December 16, 2016 through the date of preliminary approval is the "Class Period." Settlement Agreement ¶ 8.

    **2.     Essential Terms of the Settlement**

Under the terms of the settlement, Defendant will pay a gross settlement amount of $1,050,000.00 on a non-reversionary basis. *Id.* ¶ 15. The net settlement amount means the amount remaining after deducting the following from the gross settlement amount: (1) attorneys' fees of up to 35% of the gross settlement amount (i.e., up to $367,500.00 if the gross settlement amount is $1,050,000.00) and reimbursement of litigation costs and expenses of up to $27,000.00 to class counsel ("Attorneys' Fees and Costs"); (2) class representative enhancement payment of up to $7,500.00 to Plaintiff; and (3) settlement administration costs, which are currently estimated not to exceed $11,000. *Id.* ¶¶ 2, 33, 34, and 35. Assuming the allocations towards these payments are awarded in full, the net settlement amount that will be available to be allocated to class members who do not submit a timely and valid Request for Exclusion ("Participating Class Members") is currently estimated to be at least $637,000.00. *Id.* ¶¶ 16, 18. The entire net settlement amount will be distributed to Participating Class Members based upon their workweeks[2] and no portion of the gross settlement amount shall revert to Defendant. *Id.* ¶ 36.

---

[2] "Workweeks" means the number of weeks of employment for each class member as a non-exempt or hourly-paid employee of Defendant in California, at any time during the class period. *Id.* ¶ 29. Defendant will calculate the number of workweeks using each class member's hire and termination dates and/or Defendant's timekeeping and payroll data, then calculating the number of weeks in which each member was employed and performed any work during the class period. For calculation purposes, a partial workweek shall be considered the same as a full workweek, but work weeks in which a class member was fully on leave or otherwise performed no work will not be considered a workweek. *Id.*

Any payment checks returned as undeliverable or un-cashed after 180 calendar days will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the class member. *Id.* ¶ 49.

### 3. Calculation of Individual Settlement Shares

The Settlement Administrator shall calculate each class member's estimated individual settlement share,[3] as follows:

> Each Class Member's "Individual Settlement Share" will be based on the Class Member's Individual Workweeks. The Individual Settlement Share will be calculated by dividing the Class Member's individual Workweeks by the total number of Workweeks worked by all Class Members, then multiplying the resultant fraction by the Net Settlement Amount to arrive at the Class Member's Individual Settlement Share. A portion of this resulting amount will be subject to tax withholdings[.]

*Id.* ¶ 37(a)

Each Individual Settlement Payment will be allocated as 20% wages and 80% non-wages (for interest and penalties). *Id.* ¶ 51. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to non-wages (for interest and penalties) will be reported on an IRS Form-1099 (if applicable) by the Settlement Administrator. *Id.* The Settlement Administrator will reduce the employee's share of taxes and withholdings. *Id.* ¶ 14. Defendant will be separately responsible for any employer payroll taxes required by law, including, but not limited to, the employer FICA, FUTA, and SDI contributions, which shall not be paid from the Gross Settlement Amount and shall be paid by Defendant separately and in addition to the Gross Settlement Amount. *Id.* ¶ 15.

### 4. Notice

Under the terms of the parties' agreement, all class members will be identified by Defendant through a review of its records. Within 15 calendar days after receiving the class list from Defendant, the Settlement Administrator will update the addresses using the U.S. Postal Service's National Change of Address Database and both e-mail a notice to all class members at

---

[3] Individual settlement shares are each Participating Class Member's respective share of the net settlement amount. *Id.* ¶ 13.

their last known e-mail address identified in the class list and mail a notice to all class members via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class List. *Id.* ¶¶ 41, 42; Am. No. 1 to Settlement Agreement ¶ 41; ECF No. 50-1. All class members will be mailed and e-mailed a notice that will provide: (i) information regarding the nature of the Action; (ii) a summary of the settlement's principal terms; (iii) the settlement class definition; (iv) the total number of individual workweeks each respective class member worked for Defendant during the class period; (v) each class member's estimated individual settlement share and the formula for calculating individual settlement shares; ( vi) the dates which comprise the class period; (vii) instructions on how to submit notices of objection, requests for exclusion, and workweeks disputes; ( viii) the deadlines by which the class member must postmark notices of objection, requests for exclusion, and/or workweeks disputes; and (ix) the claims to be released. Am. No. 1 to Settlement Agreement ¶ 43; *see also* ECF No. 50-2 (Proposed Notice).

### 5. Request for Exclusion, Notice of Objection, and Workweeks Dispute Procedures

Any class member wishing to be excluded from the settlement must submit a written letter ("Request for Exclusion") to the Settlement Administrator, by mail or e-mail, on or before the date that is 45 calendar days from the initial mailing of the class notice by the Settlement Administrator. Settlement Agreement ¶¶ 25, 26; Am. No. 1 to Settlement Agreement ¶ 25. A request for exclusion must be signed by the class member and include: (i) the member's full name, mailing address, and telephone number; (ii) the last four digits of the member's Social Security number; (iii) the case name and number (*Koeppen v. Carvana, LLC*, Case No. 3:21-cv-01951-TSH); and (iv) a written statement that the member requests to be excluded from the Settlement. Am. No. 1 to Settlement Agreement ¶ 25.

To object to the settlement, a Participating Class Member must submit a valid written objection ("Notice of Objection") to the Settlement Administrator, by mail or e-mail, on or before the response deadline. *Id.* ¶¶ 17, 46. The notice must be signed by the objector and include: (i) the objector's full name, mailing address, and telephone number; (ii) the last four digits of the objector's Social Security number; (iii) a written statement of all grounds for the objection,

5

1  accompanied by any legal support for such objection; and (iv) copies of any papers, briefs, or

2  other documents upon which the objection is based, if any documents are a basis of the objection.

3  *Id.* ¶ 17.  Participating Class Members may also present their objection orally at the Final

4  Approval Hearing, irrespective of whether they submit a notice of objection.  *Id.* ¶ 46.

5        The class notice will include the procedure by which a Participating Class Member may

6  dispute the number of workweeks allocated to him or her by submitting a timely and valid written

7  statement ("Workweeks Dispute"), which must be signed by the Participating Class Member and

8  include: (i) the member's full name, mailing address, and telephone number; (ii) the last four

9  digits of the member's Social Security number; and (iii) a written statement that the member

10 disputes the number of workweeks which have been credited to him or her, and an assertion as to

11 what the proper number of workweeks should be, with any supporting documentation for that

12 assertion which may be in the member's possession.  Settlement Agreement ¶¶ 30, 44.

### 6. Release

The Released Claims that are the subject of the settlement are defined as:

> [A]ll claims, rights, demands, liabilities, and causes of action, arising from, or related to, the claims alleged or which could have been alleged in the Complaint based on or related to the operative pleaded facts or legal theories in the Action or Plaintiff's letter to the Labor and Workforce Development Agency, or that could have been alleged under the same or similar facts, allegations, and/or claims, including:
>
> (a) Failure to pay overtime wages (including but not limited to violations of Labor Code §§ 510, 551, 552, 1194, 1198), failure to provide meal periods or pay premiums in lieu thereof (including but not limited to violations of Labor Code §§ 226.7, 512), failure to provide rest periods or pay premiums in lieu thereof (including but not limited to violations of Labor Code § 226.7), failure to pay minimum wages (including but not limited to violations of Labor Code §§ 1194, 1194.2, 1197, 1197.1), failure to timely pay final wages (including but not limited to violations of Labor Code §§ 201, 202, 2023), failure to timely pay wages during employment (including but not limited to violations of Labor Code §§ 204, 210), failure to timely furnish accurate wage statements (including but not limited to violations of Labor Code §§ 226), failure to maintain requisite payroll records (including but not limited to violations of Labor Code §§ 1174), failure to reimburse necessary business expenditures (including but not limited to violations of Labor Code §§ 2800, 2802), and unfair business practices pursuant to California Business & Professions Code §§ 17200 et seq., including all types of relief available for the above-referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines,

> liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.
>
> (b) Any and all other claims under California common law, the California Labor Code, the Fair Labor Standards Act, California Industrial Welfare Commission Wage Orders, and the California Business and Professions Code alleged in or that could have been alleged under the same or similar facts, allegations and/or claims pleaded in the Action.
>
> (c) Nothing contained in this paragraph or the definition of Released Claims is intended to or does release any claim for civil penalties pursuant to the Private Attorneys General Act, Labor Code § 2698.

Settlement Agreement ¶ 22.

The Released Parties means Defendant and its respective successors and predecessors in interest, subsidiaries, affiliates, and parents; and its and their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, insurers and reinsurers. *Id.* ¶ 23.

Upon the effective date (defined as the date the Court's order granting final approval becomes final and is no longer appealable) and full funding of the gross settlement amount, in addition to the claims being released by all Participating Class Members, Plaintiff will release and forever discharge the released parties, to the fullest extent permitted by law, of and from any and all claims, known and unknown, asserted and not asserted, which Plaintiff has or may have against the released parties as of the date of execution of the settlement agreement. *Id.* ¶¶ 12, 62.

### III.   LEGAL STANDARD

A class action settlement must be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), based on the following fairness factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (cleaned up). However, the Court cannot fully assess these until the final approval hearing. Thus, at this stage "a full fairness analysis is unnecessary," *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal.

7

2008) (cleaned up), and "the settlement need only be potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up).

Whether a settlement agreement has been negotiated before a class has been certified or after, courts must also undertake an additional search for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *In re Bluetooth*'s red-flag factors to post-class certification settlement approvals).

## IV. DISCUSSION

### A. Settlement Process

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). It must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (cleaned up). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

The process here was fair. "'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'" *Harris*, 2011 WL 1627973, at *8 (quoting *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010)). The settlement agreement is the result of mediation with Jeffrey A. Ross, a respected mediator experienced in handling complex wage-and-hour matters. Blanchard Decl. ¶ 11; *see Harris*, 2011 WL 1627973, at *8 (mediation with an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that

the settlement is non-collusive.").

The record also reflects that class counsel conducted a thorough investigation into the facts and circumstances of the case and diligently investigated the allegations in this lawsuit. *See* Blanchard Decl. ¶¶ 11-13. Class counsel reviewed a volume of documents and data obtained from Defendant, Plaintiff, and other sources, including Plaintiff's employment records, job description, earning statements, Plaintiff's time and pay data, the Carvana Employee Handbook, and company policies and procedures (including employee meal period waiver form, time clock correction form, paid time off plan, timekeeping policy, break and meal periods policy, overtime and work off the clock policy, fit for duty policy, information systems security policy, acknowledgement of receipt of California meal period and rest break policy), among other information and documents. *Id.* The parties also met and conferred on numerous occasions over issues relating to the pleadings, jurisdiction, and the production of documents and data prior to mediation. *Id.* ¶ 12. This factor therefore weighs in favor of granting preliminary approval.

**B.     Obvious Deficiencies**

At this stage, there are no obvious deficiencies in the settlement agreement. The settlement amount of $1,050,000.00 provides substantial monetary recovery to the class members, it appears to be fair and reasonable, and there is no indication it is inadequate when compared to the risks of continued litigation. This factor weighs in favor of granting preliminary approval.

**C.     Preferential Treatment**

The Court next examines whether the settlement agreement "improperly grant[s] preferential treatment." *In re Tableware*, 484 F. Supp. 2d at 1079. The only preferential treatment is the $7,500 enhanced payment to Plaintiff. Such "[i]ncentive awards are fairly typical in class action cases . . . to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). The award is within the range of possible approval, and this factor weighs in favor of preliminary approval. *See Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in the range of $2,000 to $25,000); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16,

2011) ($10,000). Further, "[i]ncentive awards are particularly appropriate in wage-and-hour actions" because named plaintiffs bear "a significant reputational risk for bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015) (quotation marks omitted). This factor also weighs in favor of granting preliminary approval.

### D.     Range of Possible Awards

The last inquiry focuses on "substantive fairness and adequacy" and considers Plaintiff's "expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080 (cleaned up); *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount") (cleaned up). "[A] proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.").

Here, the settlement agreement is within the range of possible approval. After initial review of the parties' agreement, the Court requested the parties answer this question: "If the parties did not settle and this matter were to proceed to trial, what do they estimate would be Carvana's total exposure? At this stage, can the parties estimate how the settlement amount compares to the damages Carvana potentially owes each of the class members?" ECF No. 41. In response, the parties provided detailed calculations estimating Carvana's total exposure, as well as a detailed analysis of how they arrived at their estimate. ECF No. 50. The parties estimate Carvana's risk-adjusted total exposure is $924,675.89. *Id.* As the gross settlement fund of $1,050,000 is above this amount, this weighs in favor of preliminary approval. *See Dimercurio v. Equilon Enterprises LLC*, 2022 WL 17669711, at *5 (N.D. Cal. Dec. 14, 2022) (finding settlement agreement was within the range of approval where it equaled roughly 37% of defendant's potential total exposure). On the other hand, continued litigation brings a risk Plaintiff and the class will

10

1    receive nothing. This factor weighs in favor of preliminary approval.

2    **E.     PAGA Representative Action**

3      A PAGA representative action is a type of qui tam action in which a private plaintiff pursues a dispute between an employer and the state Labor and Workforce Development Agency on behalf of the state." *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382, 384 (2014), *abrogated by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022). Accordingly, there are "fundamental differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (cleaned up); *see also Arias v. Superior Court*, 46 Cal. 4th 969, 982-83 (2009) (holding that class certification is not required to pursue a PAGA action). "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any settlement." *Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)).

  Here, the parties acknowledge that no amount of the settlement shall be allocated to Plaintiff's PAGA claim. Settlement Agreement ¶ 31. Plaintiff also acknowledges the existence of a prior PAGA claim against Defendant, *Barrientos v. Carvana, LLC, et al.*, Orange County Superior Court Case No. 30-2020-01173904. *Id.* In conjunction with the motion for final approval of the settlement, Plaintiff will request the Court dismiss his PAGA claim in this case without prejudice, and he will not seek to intervene in the *Barrientos* matter or object to the request for approval of the PAGA settlement in that case. *Id.* Accordingly, no separate analysis is required.

**F.     Class Notice Plan**

  For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v)

11

> that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up). The proposed class notice includes each of the seven requirements above. Further, based on the Court's concern that the initial proposed notice required class members to submit objections and requests for exclusion by mail only (*see* ECF No. 41), the parties revised the form of notice to include e-mail (ECF No. 50-2).

## G.  Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

Here, Plaintiff plans to request up to 35% of the gross settlement amount (i.e., up to $367,500.00 if the gross settlement amount is $1,050,000.00). 25 percent of the common settlement fund is a "benchmark" for a reasonable fee award, unless special circumstances warrant a departure. *Id.* at 942. At this stage, the request is not so out of bounds as to warrant denying preliminary approval. *See Dimercurio v. Equilon Enterprises LLC*, 2022 WL 17669711, at *6 (N.D. Cal. Dec. 14, 2022) (preliminarily approving settlement that included 33.33 percent of the gross settlement fund for attorneys' fees). Accordingly, Plaintiffs shall file a motion for attorneys' fees and costs, which the Court will separately assess along with any objections. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (noting that Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee motion").

## H.  Class Certification

Plaintiff requests the Court certify the proposed class for settlement purposes only. Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality,

typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification laid out by Rule 23(b). Plaintiff relies on Rule 23(b)(3) and must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* At the same time, trial "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

**1.  Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quoting *Gen. Tel. Co. of the Nw. Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). As the proposed class consists of approximately 1,224 individuals, the Court concludes that Plaintiff has satisfied his burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable. *See Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone.") (internal quotation marks and citation omitted).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (internal quotation marks and alterations omitted).

Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members[]" and divergent ways in which these practices affect individual class members, if any, do not undermine the finding of commonality. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976). Here, the class members seek remedies under California's wage-and-hour laws for violations arising from common, uniform, and systematic practices which applied to all members during the settlement class period. Accordingly, the commonality requirement is satisfied for settlement purposes.

### 3. Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). To satisfy this test, claims need not be "identical." *Armstrong*, 275 F.3d at 869.

Given the structure of the settlement, the proposed class satisfies the typicality requirement for settlement purposes as Plaintiff's claims arise from the same factual basis and are based on the

14

1 same legal theories as those applicable to all other class members. *Wehner v. Syntex*, 117 F.R.D.
2 641, 644 (N.D. Cal. 1987). The typicality requirement is thus satisfied.

### 4. Adequacy

"[A]dequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 at 462. No party has suggested, and the Court has not found, any evidence in the record suggesting that Plaintiff has any conflict of interest with the other class members. He shares common claims with the other proposed members of the class and seeks the same relief they do. Additionally, class counsel, Lawyers for Justice, PC, has submitted a declaration showing they are experienced in employment class action and complex wage-and-hour litigation, having been appointed class counsel in many other cases. Blanchard Decl. ¶¶ 2-7. The Court concludes Plaintiff and his counsel will adequately represent the proposed class.

### 5. Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks and citation omitted).

Here, the proposed class is sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting class members predominate over any questions that may affect only individual members. For example, Defendant's alleged failure to properly pay its employees for all hours worked and provide compliant meal and rest periods are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the

questions of fact and law relating to these issues predominate. Further, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1022. The superiority requirement involves a "comparative evaluation of alternative mechanism of dispute resolution." *Id.* Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. Therefore, a class resolution is superior to any other available methods. Accordingly, common questions of law and fact predominate and this dispute is best adjudicated on a representative basis.

The Court concludes that provisional certification of the proposed class is appropriate for the purposes of settlement.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for preliminary approval, preliminarily approves the settlement agreement and notice plan, and **ORDERS** as follows:

1) The Court conditionally certifies the following class for the purposes of settlement only: "All current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time from December 16, 2016 to Preliminary Approval."

2) The Court preliminarily appoints Edwin Aiwazian, Arby Aiwazian, Joanna Ghosh, and Yasmin Hosseini of Lawyers *for* Justice, PC as class counsel, Ronell Koeppen as class representative, and ILYM Group Inc. as Settlement Administrator.

3) Within 20 calendar days of this Order granting preliminary approval, Defendant will provide class members' information to the Settlement Administrator. Within 15 calendar days thereafter, the Settlement Administrator will mail and e-mail the approved class notice to class members. Prior to the initial mailing, the Settlement Administrator shall perform a search using the National Change of Address Database and update the class list with any known or identifiable address changes.

4) When the Settlement Administrator mails out the class notice, Plaintiffs shall file a copy of the final class notice with the Court.

16

5) Within 21 days of this Order, Koeppen shall file a motion for attorneys' fees and costs pursuant to Civil Local Rule 7.

6) Koeppen shall file a motion for final settlement approval on July 11, 2024.

7) The Court will hear argument on the motion for attorneys' fees and costs and the motion for final settlement approval at the Final Approval Hearing, which will take place in person on August 22, 2024 at 10:00 a.m.

8) If the parties wish to adjust any of the above dates, they shall submit a stipulation. The stipulation shall cite, with line numbers if applicable, the portions of this Order, the Settlement Agreement, or the approved Class Notice that are affected by the stipulation. The parties shall also ensure that before the approved class notice is sent to class members, it is amended to reflect any dates that are changed by the stipulation (i.e., the date on which Koeppen will file his motion for attorneys' fees and costs; the date of the Final Approval Hearing).

**IT IS SO ORDERED.**

Dated: May 3, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge