UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONELL KOEPPEN,<br><br>Plaintiff,<br><br>v.<br><br>CARVANA, LLC,<br><br>Defendant. | Case No. 21-cv-01951-TSH<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: ECF Nos. 56, 57 |

## I.     INTRODUCTION

Before the Court are Plaintiff Ronell Koeppen's unopposed motion for final approval of class action settlement and unopposed motion for attorneys' fees.  ECF Nos. 56 ("Fees Mot."), 57 ("Final Approval Mot.").  No objections have been received.  The Court held a final fairness hearing on August 22, 2024.  For the reasons stated below, the Court **GRANTS** the motion for final approval and **GRANTS** the requested attorneys' fees and costs.[1]

## II.     BACKGROUND

### A.     Complaint Allegations

Plaintiff worked as an hourly, nonexempt Customer Advocate for Defendant Carvana, LLC from approximately January to July 2020.  First Am. Compl. ¶ 24, ECF No. 5-1.  He sought to represent a class defined as: "All current and former hourly-paid or non-exempt employees who worked for . . . Defendant[] within the State of California at any time during the period from December 16, 2016 to final judgment and who reside in California."  *Id.* ¶ 12.  Plaintiff's core allegations are that Defendant violated the California Labor Code and California Business and Professions Code by failing to properly pay minimum and overtime wages, failing to provide

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 11, 13.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   compliant meal and rest periods or pay associated premiums, failing to timely pay wages during

2   employment and upon termination and associated waiting time penalties, failing to provide

3   compliant wage statements, and failing to reimburse necessary business-related expenses.  *Id.* ¶¶

4   23-52.  Plaintiff also contends Defendant's conduct constitutes unfair business practices and gives

5   rise to penalties under the Private Attorneys General Act, Cal. Lab. Code § 2698, et. seq.

6   ("PAGA").  *Id.* ¶¶ 16-22.  As a result, Plaintiff alleges he and the class members are entitled to

7   unpaid wages, penalties and attorneys' fees.  Defendant denies any liability associated with the

8   claims and allegations and denies that Plaintiff or the class members are entitled to any relief.

9   **B.     Procedural History**

10       On December 16, 2020, Plaintiff filed his original complaint in the Superior Court of

11   California for the County of Alameda, Case No. RG20084625.  On February 22, 2021, he filed the

12   operative First Amended Class Action Complaint, asserting 11 causes of action: (1) unpaid

13   overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid

14   minimum wages, (5) final wages not timely paid, (6) wages not timely paid during employment,

15   (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed

16   business expenses, (10) violation of Cal. Bus. & Prof. Code §§ 17200, et seq., and (11) violation

17   of Cal. Lab. Code § 2698, California Labor Code Private Attorneys General Act of 2004

18   ("PAGA").  First Am. Compl. ¶¶ 53-139.  Defendant removed the case to this Court on March 19,

19   2021.

20       On June 10, 2021, the parties notified the Court that they had agreed and scheduled a

21   private mediation with mediator Jeffrey A. Ross to occur on February 14, 2022.  ECF No. 13.  The

22   parties agreed to meet and confer regarding sufficient informal discovery in order to hold a fruitful

23   mediation.  As such, the Court continued the initial case management conference to March 10,

24   2022.  ECF No. 14.  On March 3, 2022, the parties notified the Court they had reached a class-

25   wide settlement and contemplated it would take 120 days to finalize the settlement papers and

26   move for preliminary settlement approval.  ECF No. 16.  The parties subsequently requested, and

27   the Court granted, several extensions of the deadline to move for preliminary approval.  ECF Nos.

28   17-19, 23-39.  On November 30, 2023, Plaintiff filed his Motion for Preliminary Approval of

Class Action Settlement.  ECF No. 40.  On May 3, 2024, the Court granted preliminary approval of the settlement.  ECF No. 53; *Koeppen v. Carvana, LLC*, No. 21-CV-01951-TSH, 2024 WL 1974545 (N.D. Cal. May 3, 2024).

### III.   SETTLEMENT AGREEMENT

**A.   The Class**

The Settlement Class consists of "All current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time from December 16, 2016 to January 1, 2024."  Blanchard Decl., Ex. 1 (Settlement Agreement) ¶ 5, ECF No. 40-1; ECF Nos. 53, 55.[2]

**B.   The Payment Terms**

Under the terms of the settlement, Defendant will pay a gross settlement amount of $1,050,000.00 on a non-reversionary basis.  Settlement Agreement ¶ 15.  The net settlement amount means the amount remaining after deducting the following from the gross settlement amount: (1) attorneys' fees in the amount of $367,500.00 and reimbursement of litigation costs and expenses of $11,870.29; (2) class representative enhancement payment of $7,500.00 to Plaintiff; and (3) settlement administration costs of $11,000 to the Settlement Administrator.  *Id.* ¶¶ 2, 33, 34, and 35.  Thus, the net settlement amount to Participating Class Members is estimated to be $652,129.71.  Castro Suppl. Decl. ¶ 15, ECF No. 62.  The entire net settlement amount will be distributed to participating class members based upon their workweeks[3] and no portion of the

---

[2] In its preliminary approval order, the Court granted the parties' request to certify a class "from December 16, 2016 to Preliminary Approval," but it subsequently approved the parties' stipulation to revised the period to end on January 1, 2024, as "the range of possible awards provided to the Court in connection with preliminary approval was based on class data through January 1, 2024 and in addition because the Parties will be able to promptly provide the class data to the settlement administrator with a January 1, 2024 cutoff date, as that class data is already prepared (whereas class data through preliminary approval may not be practicable by the deadline due to needing the payroll period to close, regathering class data, processing the additional class data, and ensuring the accuracy of the class data)."  ECF No. 55.

[3] "Workweeks" means the number of weeks of employment for each class member as a non-exempt or hourly-paid employee of Defendant in California, at any time during the class period. Settlement Agreement ¶ 29.  Defendant will calculate the number of workweeks using each class member's hire and termination dates and/or Defendant's timekeeping and payroll data, then calculating the number of weeks in which each member was employed and performed any work during the class period.  For calculation purposes, a partial workweek shall be considered the same as a full workweek, but workweeks in which a class member was fully on leave or otherwise

United States District Court
Northern District of California

gross settlement amount shall revert to Defendant.  Settlement Agreement ¶ 36.  Any payment checks returned as undeliverable or un-cashed after 180 calendar days will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the class member.  *Id.* ¶ 49.

All individual settlement payments will be allocated as follows: 20% as wages (the "wage portion"), which will be reported on an IRS Form W-2; and the remaining 80% as non-wages (for interest and penalties) which will be reported on an IRS Form 1099.  *Id.* ¶ 51.  The Settlement Administrator will reduce the employee's share of taxes and withholdings.  *Id.* ¶ 14.  Defendant will be separately responsible for any employer payroll taxes required by law, including, but not limited to, the employer FICA, FUTA, and SDI contributions, which shall not be paid from the Gross Settlement Amount and shall be paid by Defendant separately and in addition to the Gross Settlement Amount.  *Id.* ¶ 15.

## C.     Scope of Release

The Released Claims that are the subject of the settlement are defined as:

> [A]ll claims, rights, demands, liabilities, and causes of action, arising from, or related to, the claims alleged or which could have been alleged in the Complaint based on or related to the operative pleaded facts or legal theories in the Action or Plaintiff's letter to the Labor and Workforce Development Agency, or that could have been alleged under the same or similar facts, allegations, and/or claims, including:

> (a) Failure to pay overtime wages (including but not limited to violations of Labor Code §§ 510, 551, 552, 1194, 1198), failure to provide meal periods or pay premiums in lieu thereof (including but not limited to violations of Labor Code §§ 226.7, 512), failure to provide rest periods or pay premiums in lieu thereof (including but not limited to violations of Labor Code § 226.7), failure to pay minimum wages (including but not limited to violations of Labor Code §§ 1194, 1194.2, 1197, 1197.1), failure to timely pay final wages (including but not limited to violations of Labor Code §§ 201, 202, 2023), failure to timely pay wages during employment (including but not limited to violations of Labor Code §§ 204, 210), failure to timely furnish accurate wage statements (including but not limited to violations of Labor Code §§ 226), failure to maintain requisite payroll records (including but not limited to violations of Labor Code §§ 1174), failure to reimburse necessary business expenditures (including but not limited to violations of Labor Code §§ 2800, 2802), and unfair business practices pursuant to California

performed no work will not be considered a workweek.  *Id.*

4

> Business & Professions Code §§ 17200 et seq., including all types of relief available for the above-referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.
>
> (b) Any and all other claims under California common law, the California Labor Code, the Fair Labor Standards Act, California Industrial Welfare Commission Wage Orders, and the California Business and Professions Code alleged in or that could have been alleged under the same or similar facts, allegations and/or claims pleaded in the Action.
>
> (c) Nothing contained in this paragraph or the definition of Released Claims is intended to or does release any claim for civil penalties pursuant to the Private Attorneys General Act, Labor Code § 2698.

Settlement Agreement ¶ 22.

The Released Parties means Defendant and its respective successors and predecessors in interest, subsidiaries, affiliates, and parents; and its and their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, insurers and reinsurers. *Id.* ¶ 23.

## D.     Residual Funds

Any payment checks returned as undeliverable or un-cashed after 180 calendar days will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the class member. *Id.* ¶ 49.

## E.     Notice

Under the terms of the parties' agreement, all class members were identified by Defendant through a review of its records. On May 20, 2024, the Court-appointed Settlement Administrator, ILYM Group, Inc., received the Court-approved text for the Class Notice. Castro Suppl. Decl., ¶ 4. On May 23 ILYM Group received a mailing list from Defendant's counsel that contained each Class Member's (1) full name, (2) most recent mailing address, (3) last-known telephone number, (4) last-known email address, (5) Social Security Number, (6) dates of employment, (7) the respective number of workweeks that each Class Member worked during the Class Period, and (8) and any other relevant information needed to calculate settlement payment (collectively, "Class List"). *Id.* ¶ 5. The Class List contained information for 1,540 individuals identified as Class Members. *Id.* ILYM Group processed the names and addresses through the National Change of

Address Database and updated the Class List with any updated addresses located. *Id*. ¶ 6.

On June 7, 2024, ILYM Group mailed the Class Notice via first class mail to the 1,540 individuals identified as Class Members in the Class List. *Id*. ¶ 7. 220 Class Notices were returned to the Settlement Administrator as undeliverable, including one (1) with a forwarding address. *Id*. ¶ 9. ILYM Group performed a computerized skip trace on the 219 returned Class Notices with no forwarding address to obtain an updated address. *Id*. As a result of this skip trace, 175 updated addresses were obtained and the Class Notice was re-mailed to those Class Members, via U.S First Class Mail. *Id*. Ultimately, 45 Class Notices remain undeliverable via mail because an updated address was not located through skip-tracing or the Class Notice was returned as undeliverable a second time. *Id*. ¶ 11. In addition, on June 7, 2024, ILYM Group emailed the Class Notice to all 1,534 individuals with email addresses contained in the Class List. 31 emails were bounced back and therefore deemed undeliverable. *Id*. ¶ 8.

**F.    Objections**

Class Members had 45 calendar days after the initial mailing of the Class Notice to Class Members to opt out of the Settlement, object to the Settlement, and/or dispute the number of Workweeks to which they were credited. Settlement Agreement ¶ 26. The response deadline was July 22, 2024. Castro Suppl. Decl. ¶ 13. The Settlement Administrator has received one written request for exclusion from the Settlement and no written objections to the Settlement from Class Members. *Id*. ¶¶ 12-13. Thus, of the 1,540 Class Members identified by the parties, 1,539 Participating Class Members, representing 99.94% of the Class, will receive a proportional share of the Net Settlement Amount through individual settlement payments. *Id*. ¶ 15.

## IV.    DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the Court should grant approval only if it is justified by the parties' showing that the Court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). If the Court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair,

1    adequate, and reasonable pursuant to Rule 23.  *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL

2    5878390, at \*5 (N.D. Cal. Nov. 21, 2012).

3             At the second stage, "after notice is given to putative class members, the Court entertains

4    any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of

5    the settlement."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014) (citing *Diaz v. Tr.*

6    *Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).  Following the final fairness

7    hearing, the Court must finally determine whether the parties should be allowed to settle the class

8    action pursuant to their agreed upon terms.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

9    221 F.R.D. 523, 525 (C.D. Cal. 2004).

10   **A.**    **Class Certification**

11             The Court previously certified a class under Rule 23(b)(3).  ECF No. 53.  Thus, "the only

12   information ordinarily necessary is whether the proposed settlement calls for any change in the

13   class certified, or of the claims, defenses, or issues regarding which certification was granted."

14   Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.  Nothing in the current

15   submission gives the Court reason to reconsider its prior certification order.

16   **B.**    **Adequacy of Notice**

17             Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

18   manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

19             Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

20   including individual notice to all members who can be identified through reasonable effort."  The

21   notice must "clearly and concisely state in plain, easily understood language" the nature of the

22   action, the class definition, and the class members' right to exclude themselves from the class.

23   Fed. R. Civ. P. 23(c)(2)(B); *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566,

24   575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in

25   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

26   heard.") (cleaned up).  Although Rule 23 requires reasonable efforts be made to reach all class

27   members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*,

28   18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable"

United States District Court
Northern District of California

notice, not "actually received" notice).

The Court finds the notice plan previously approved by the Court, as implemented by the Settlement Administrator, complies with Rule 23(c)(2)(B). First, the content of the Notice was sufficient under Rule 23(c)(2)(A). Second, all 1,540 Class Members were mailed, and nearly all were also emailed, notice packets. Castro Suppl. Decl. ¶¶ 7, 8. Although 220 notices were initially returned as undeliverable by mail, following skip-tracing, only 45 remained undeliverable via mail because an updated address was not located or the Class Notice was returned as undeliverable a second time. *Id*. ¶¶ 9-10. The Court also notes that 1,534 Class Members were emailed notice packets, and only 31 emails bounced back. *Id.* ¶ 8. Finally, no objections were received and only one member requested to be excluded. *Id.* ¶¶ 12-13. Thus, of the 1,540 Class Members identified by the parties, 1,539 Participating Class Members, representing 99.94% of the Class, will receive a proportional share of the Net Settlement Amount through individual settlement payments. *Id.* ¶ 15.

## C.    Final Approval of the Settlement Agreement

To grant final approval, the Court must find that the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village*, 361 F.3d at 575. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is [insufficient]." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In such cases, courts must also ensure that the settlement did not result from collusion among the parties. *Id*. at 946-47.

As discussed below, a review of the fairness and *Bluetooth* factors indicates that the

settlement is fair, adequate, and reasonable.

### 1. The Fairness Factors

#### a. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The first and second factors require the Court to consider "the strength of the [P]laintiffs' case on the merits balanced against the amount offered in the settlement" and the risks of further litigation. *See Nat'l Rural Telecomm.*, 221 F.R.D. at 526 (cleaned up). There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (internal citation omitted).

Plaintiff contends Defendant violated the California Labor Code and California Business and Professions Code by failing to properly pay minimum and overtime wages, failing to provide compliant meal and rest periods or pay associated premiums, failing to timely pay wages during employment and upon termination and associated waiting time penalties, failing to provide compliant wage statements, and failing to reimburse necessary business-related expenses. First Am. Compl. ¶¶ 23-52. Plaintiff also contends Defendant's conduct constitutes unfair business practices and gives rise to penalties under PAGA. *Id.* ¶¶ 16-22. Defendant denies any liability associated with the claims and allegations and denies that Plaintiff or the class members are entitled to any relief.

If the action had not settled, the parties likely faced a lengthy period of discovery, class certification, motions for summary judgment, and trial. Such extensive litigation would be costly, time-consuming, and uncertain, and even if Plaintiff prevailed at trial, an appeal would likely

1   follow.  Given the risks and costs of continued litigation, the immediate reward to class members

2   through settlement is preferable.  Further, "[t]he benefit of receiving this money now rather than

3   later at some unidentified and uncertain time has its own value."  *Dixon v. Cushman & Wakefield*

4   *W., Inc.*, 2022 WL 1189883, at *6 (N.D. Cal. Apr. 21, 2022).  Thus, the challenges Plaintiff would

5   face should this case move forward instead of settling, in contrast to the finality and speed of

6   recovery under the Settlement Agreement, weigh in favor of approving the settlement.

7               **b.      Settlement Amount**

8           The amount of recovery also favors final approval of the settlement.  When considering the

9   fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a

10  whole, rather than the individual component parts, that must be examined for overall fairness."

11  *Nat'l Rural Telecomm.*, 221 F.R.D. at 527.  "[I]t is well-settled law that a proposed settlement may

12  be acceptable even though it amounts to only a fraction of the potential recovery that might be

13  available to the class members at trial."  *Id.* (collecting cases).

14          Under the Settlement Agreement, the gross settlement amount will be fully paid out, in

15  accordance with the terms of the settlement.  As explained above, each participating class member

16  will be paid a pro rata share of the net settlement amount, based on the number of workweeks

17  credited to him or her.  The highest individual settlement share is estimated to be $2,882.36. and

18  the average share is estimated to be at least $423.74.  Castro Suppl. Dec. ¶ 15.  The parties

19  estimate Defendant's risk-adjusted total exposure is $924,675.89.  ECF No. 50.  As the gross

20  settlement fund of $1,050,000 is above this amount, this weighs in favor of preliminary approval.

21  *See Dimercurio v. Equilon Enters. LLC*, 2022 WL 17669711, at *5 (N.D. Cal. Dec. 14, 2022)

22  (finding settlement agreement was within the range of approval where it equaled roughly 37% of

23  defendant's potential total exposure).  On the other hand, continued litigation brings a risk

24  Plaintiff and the class will receive nothing.  Further, in granting preliminary approval, the Court

25  concluded that the estimated payout to Class Members was fair in relation to the risks of continued

26  litigation, and there is nothing in the final approval materials that changes the Court's analysis on

27  this score.

28          Finally, as noted above, only one eligible class member chose to opt-out and none objected

to the settlement.  Thus, that "the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The Court therefore concludes that the amount offered in settlement also weighs in favor of final approval.

### c.    Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution."  *Ontiveros*, 303 F.R.D. at 371.

The Court's preliminary approval order discussed class counsel's investigation of Plaintiff's claims, exchange of discovery with Defendant, participation in private mediation, subsequent negotiations, and Defendant's asserted defenses and the value of Plaintiff's claims. ECF No. 53 at 8-9.  The Court found the process was fair and favored approval of the parties' agreement.  *Id.*  The Court affirms that preliminary determination and finds that the extent of discovery and stage of proceedings support approval of the settlement.

### d.    Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. "The Ninth Circuit recognizes that parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Knapp*, 283 F. Supp. 3d at 833 (citation omitted).  Here, Class Counsel has extensive experience in employment class action law and complex wage-and-hour litigation.  Ghosh Decl. ¶¶ 14-19, ECF No. 56-1.  Lawyers for Justice, PC has been appointed class counsel in numerous complex wage-and-hour cases and have recovered millions of dollars for individuals in California.  *Id.* ¶¶ 16-19. Thus, "Class Counsel's experience in California wage-and-hour litigation and their assertion that the settlement is fair, adequate, and reasonable supports final approval of the settlement."  *Uschold v. NSMG Shared Servs., LLC*, 2020 WL 3035776, at *10 (N.D. Cal. June 5, 2020) (citing *Hanlon*,

United States District Court
Northern District of California

150 F.3d at 1026; *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotation marks and citation omitted)).

### e.    Presence of a Government Participant

There is no governmental participant in this class action.  As a result, this factor does not apply to the Court's analysis.

### f.    Reaction of Class Members

"'The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court.'"  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting 5 Moore's Federal Practice, § 23.85[2][d] (Matthew Bender 3d ed.).  "In this regard, '[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class.'"  *Id.* (quoting Manual for Complex Litigation, Third, § 30.44 (1995)).

Here, no objections to the settlement have been received.  "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (cleaned up).  Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Id.* (internal quotation marks and citation omitted).

### g.    Summary

In sum, the fairness factors weigh in favor of granting Plaintiff's motion for final approval of the class action settlement.

### 2.    The *Bluetooth* Factors

Given that the parties settled prior to class certification, the Court must look beyond the *Churchill* fairness factors and examine the settlement for evidence of collusion with an even higher level of scrutiny.  *In re Bluetooth*, 654 F.3d at 946.  The question here is whether the

settlement was the result of good faith, arms-length negotiations or fraud and collusion.  *See id.*  In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations."  *Id.* at 947.  The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).  However, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion . . . .  [T]he Court need not reject the settlement outright."  *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015) (emphasis in original) (quoting *In re Bluetooth*, 654 F.3d at 947).  In *Bluetooth*, the Ninth Circuit explained that a "disproportion between the fee award and the benefit obtained for the class" does not make a settlement "per se unreasonable."  654 F.3d at 945 (emphasis omitted); *see also Roes, 1–2 v. SFBSC Mgmt*, 944 F.3d 1035, 1060 (9th Cir. 2019) (explaining that a "disproportionate attorneys' fee does not mean the settlement cannot still be fair, reasonable, or adequate").  When faced with a disproportionate fee, "the Court is merely obligated to 'assure itself that the fees awarded in the agreement were not unreasonably high' in light of the results obtained for class members."  *In re TracFone*, 112 F. Supp. 3d at 1007 (quoting *In re Bluetooth*, 654 F.3d at 947).

For the first *Bluetooth* factor, the Court compares the payout to the class (actual and expected) to class counsel's unopposed claim for fees.  *See Harris v. Vector Mktg. Corp.*, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011) (examining "whether a disproportionate part of the settlement is being awarded to class counsel" under the settlement agreement).  The gross

United States District Court
Northern District of California

settlement amount is $1,050,000.00 and Class Counsel seeks $367,500.00 in attorney's fees—35 percent of the Settlement Amount.  This ratio taken alone may be a sign of collusion.  *See In re Bluetooth*, 654 F.3d at 947.  However, "cases with a relatively small fund of under $10 million will 'often result in fees above 25%.'"  *DiMercurio*, 2024 WL 2113857, at *9 (quoting *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008)); *see also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citing cases).  Thus, while the high percentage is a red flag, it does not raise a concern regarding collusion.

The second warning sign—a "clear sailing" provision—is present here: the Settlement Agreement states "Class Counsel will request, and Counsel for the Defendant will not oppose, fees in the amount of Thirty-Five Percent (35%) of the Gross Settlement Amount, (e.g. Three Hundred Sixty Seven Thousand, Five Hundred Dollars ($367,500.00), if the Gross Settlement Amount is $1,050,000.00), to be paid from the Gross Settlement Amount, subject to Court approval." Settlement Agreement ¶ 2.  "The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class."  *In re Bluetooth*, 654 F.3d at 948 (internal quotation marks omitted).  "Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id*.  However, under the circumstances presented here, the Settlement Agreement does not appear to be an example of Defendant agreeing to pay Class Counsel excessive fees and costs in exchange for accepting an unfair settlement for the Class; instead, as discussed above, given the significant recovery for class members and the risks of continuing to litigate this action, the class member recovery is fair, and as discussed below, the amount of fees and costs is reasonable.  Thus, the clear sailing provision, though a *Bluetooth* warning sign, does not signal collusion under the circumstances presented here.  *See Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644, at *8 (N.D. Cal. June 23, 2020) (finding clear sailing provision did not signal collusion where class recovery was fair, amount of fees and costs were reasonable, and risks of continuing litigation

1    weighed in favor of settlement).

2        The third warning sign—whether the parties have arranged for fees not awarded to the

3    class to revert to defendant rather than be added to the settlement fund, *see In re Bluetooth*, 654

4    F.3d at 948—is not present here.  The Settlement Agreement is non-reversionary:  "[C]hecks

5    returned as undeliverable and Individual Settlement Payment checks remaining un-cashed for

6    more than one hundred and eighty (180) calendar days after issuance will be cancelled and the

7    funds associated with the un-cashed checks will be tendered to tendered to the California State

8    Controller as unclaimed property in the name of the Class Member."  Settlement Agreement ¶ 49.

9        Notwithstanding the existence of two of the three *Bluetooth* factors, the Court concludes

10   the Settlement Agreement did not result from, nor was it influenced by, collusion.  Instead, the

11   Settlement Agreement adequately satisfies the Settlement Class Members' claims.  *See Chen*,

12   2020 WL 3432644, at *8 (settlement did not result from collusion, despite presence of two of the

13   three *Bluetooth* factors); *Dixon*, 2022 WL 1189883, at *9 (same).

14       **3.    Summary**

15       In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not

16   indicate collusion.  The Court is therefore satisfied that the Settlement Agreement was not the

17   result of collusion between the parties and instead is the product of arms-length negotiations

18   between experienced and professional counsel.  There are no objections to address.  For each of

19   these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is

20   appropriate.

21   **D.    PAGA Claim**

22       "A PAGA representative action is . . . a type of qui tam action" in which a private plaintiff

23   pursues "a dispute between an employer and the state LWDA on behalf of the state."  *Iskanian v.*

24   *CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382 (2014), *abrogated by Viking River Cruises, Inc. v.*

25   *Moriana*, 596 U.S. 639 (2022).  "[B]ecause a settlement of PAGA claims compromises a claim

26   that could otherwise be brought by the state," courts must "review and approve any settlement."

27   *Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017)

28   (quoting Cal. Lab. Code § 2699(l)(2)).

United States District Court
Northern District of California

15

As discussed in the preliminary approval order, the parties acknowledged that no amount of the settlement shall be allocated to Plaintiff's PAGA claim.  Settlement Agreement ¶ 31.  Plaintiff also acknowledges the existence of a prior PAGA claim against Defendant, *Barrientos v. Carvana, LLC, et al.*, Orange County Superior Court Case No. 30-2020-01173904, and states that he will not seek to intervene in the *Barrientos* matter or object to the request for approval of the PAGA settlement in that case.  *Id.*  Thus, in conjunction with the motion for final approval of the settlement, the parties filed a stipulation for dismissal of the PAGA claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), ECF No. 58, which the Court reviewed and approved on July 19, 2024, ECF No. 59.  Accordingly, no separate analysis is required.

**E.     Motion for Attorney's Fees, Costs, and Class Representative Incentive Award**

**1.     Attorney's Fees**

Class Counsel states they spent 408.5 hours litigation this case and their total lodestar is $347,225.00.  Mot. at 14-15; Ghosh Decl. ¶ 12 & Ex. A.  This represents 35 percent of the settlement fund.

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class.  *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).  The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted).

"While attorneys' fees and costs may be awarded in a certified class action . . ., courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (citation omitted).  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award.  *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-

1    consuming task of calculating the lodestar." *Id.* Regardless of whether the court uses the lodestar

2    or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to

3    what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

4                    **a.      Percentage of Recovery Method**

5            "Under the percentage-of-recovery method, the attorney's fees equal some percentage of

6    the common settlement fund." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th

7    Cir. 2015). In the Ninth Circuit, "courts typically calculate 25% of the fund as the 'benchmark'

8    for a reasonable fee award, providing adequate explanation in the record of any 'special

9    circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. "An adjustment, either

10   up or down, must be accompanied by a reasonable explanation of why the benchmark is

11   unreasonable under the circumstances." *Reyes v. Experian Info. Servs., Inc.*, 856 Fed. App'x 108,

12   110 (9th Cir. 2021) (cleaned up).

13           Class Counsel's request for $367,500.00 or 35 percent of the Settlement Fund is consistent

14   with the Settlement Agreement. While recognizing this amount is higher than the benchmark,

15   Class Counsel urges this amount "is commensurate with federal court and, in particular, Ninth

16   Circuit decisions, namely, case surveys reflect that awards within this range, or more, are

17   common." Fees Mot. at 12. They maintain a similar result is warranted here based on the risk

18   assumed and efforts expended by Class Counsel, the relief obtained for the Class, and the skill and

19   reputation of the attorneys. *Id.* at 10-12.

20           The Court understands the importance of carefully reviewing class fee award requests:

21                   Because in common fund cases the relationship between plaintiffs and
                     their attorneys turns adversarial at the fee-setting stage, courts have
22                   stressed that when awarding attorneys' fees from a common fund, the
                     district court must assume the role of fiduciary for the class plaintiffs.
23                   Accordingly, fee applications must be closely scrutinized. Rubber-
                     stamp approval, even in the absence of objections, is improper.
24

25   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted). Here, the

26   Court finds an upward adjustment for a fee award of 35 percent of the common fund is appropriate

27   for several reasons.

28           First, as noted above, "cases with a relatively small fund of under $10 million will 'often

result in fees above 25%.'" *DiMercurio*, 2024 WL 2113857, at *9; *Alvarez*, 2017 WL 2214585, at *3 ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citing cases).

Second, there were no objections either to the settlement or to the attorney's fee request. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (finding factor favored approval where no objections to fee where raised); *DiMercurio*, 2024 WL 2113857, at *9 (same).

Third, Class Counsel achieved substantial results in this case. The most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). As discussed, Class Counsel obtained a significant recovery for the class by securing a $1,050,000 non-reversionary settlement fund. Even after factoring in fees, costs, and service awards, class members stand to receive $423.74 on average for their injuries. *See* Castro Suppl. Decl. ¶ 15. The Court agrees that this is a good result that confers benefits on the class. The fact that no class members have objected and only one class member opted out buttresses this conclusion. Accordingly, this factor weighs in favor of granting substantial fees.

Fourth, the requested fee award also accounts for the risks Plaintiff would face in further litigation: the risk that further litigation might result in not recovering at all is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. As Class Counsel explained in support of the motion for final approval, "the risks of further litigation included a determination that the claims were unsuitable for class treatment and/or representative adjudication, failure to obtain certification, class de-certification after certification of a class, allowing a jury to decide the claims, trial, and/or appeals." Fees Mot. at 10. Counsel also litigated this case skillfully and professionally.

Fifth, courts tend to find above-market-value fee awards more appropriate in the class action context given the need to encourage counsel to take on cases for plaintiffs who may not otherwise be able to afford to pay hourly fees. *See, e.g., In re Washington Pub. Power Supply Sys.*

United States District Court
Northern District of California

*Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015); *In re Quantum Health Res., Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.").

   Finally, in similar cases, several other courts—including those in this District—have concluded that a higher award was appropriate in employment class actions.  See, e.g., *Clayborne v. Newtron, LLC*, 2023 WL 5748773, at *6 (N.D. Cal. Sept. 6, 2023) (awarding 35%); *Rivas v. BG Retail, LLC*, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (awarding 45%); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million."); *Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626, at *7 (N.D. Cal. Feb. 4, 2021) (awarding class counsel 35% of common fund); *Bennett v. SimplexGrinnell LP*, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (award representing 38.8% of common fund was reasonable).

   Finally, as explained below, a 35 percent award is supported by the lodestar cross-check.

### b. Lodestar Method

   As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis.  *See, e.g., Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  The lodestar method "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015). "Where a lodestar is merely being used as a cross-check, the court 'may use a rough calculation of the lodestar.'" *Joh v. Am. Income Life Ins. Co.*, 2021 WL 66305, at *7 (N.D. Cal. Jan. 7, 2021) (quoting *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017)).

   Class Counsel's work in this case is broken down as follows:

United States District Court
Northern District of California

| Attorney | Title | Admit Year | Rate | Hours | Lodestar |
|---|---|---|---|---|---|
| Edwin Aiwazian | Managing Attorney & Shareholder | 2004 | $1,495 | 104.10 | $155,629.50 |
| Arby Aiwazian | Shareholder | 2010 | $1,295 | 72.50 | $93,887.50 |
| Joanna Ghosh | Managing Attorney | 2010 | $1,295 | 11.30 | $14,633.50 |
| Elizabeth M. R-H Parker-Fawley | Attorney | 2014 | $850 | 8.30 | $7,055.00 |
| Melissa A. LeBlanc-Mansell | Attorney | 2012 | $850 | 21.10 | $17,935.00 |
| Hagit Goltzer | Attorney | 2018 | $725 | 40.60 | $29,435.00 |
| Yasmin Hosseini | Attorney | 2019 | $575 | 34.80 | $20,010.00 |
| Arman Marukyan | Attorney | 2019 | $575 | 18.00 | $10,350.00 |
| Annabel F. Blanchard | Attorney | 2008 | $725 | 54.00 | $39,150.00 |
| Kenyon D. Harbison | Attorney | 2008 | $850 | 28.30 | $24,055.00 |
| Tiffany J. Hyun | Attorney | 2016 | $725 | 3.50 | $2,537.50 |
| Centrina J. Jackson | Attorney | 2007 | $725 | 1.50 | $1,087.50 |
| Andrew H. Kim | Attorney | 2019 | $575 | 10.50 | $6,037.50 |
| | | | **Total:** | **408.50** | **$421,803.00** |

Ghosh Decl. ¶ 12 & Ex. A; Ghosh Suppl. Decl., Ex. 2, ECF No. 62; Ghosh Suppl. Decl. ¶ 4, ECF No. 64.  Counsel also provided an Attorney Task and Time Chart that sets forth the nature of the legal services provided by attorneys at Lawyers for Justice and the time incurred in performing these services.  Ghosh Suppl. Decl., Ex. 2.

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Class Counsel's hourly rates are supported by their own declarations attesting to their experience and similar awards in prior

cases.  Ghosh Decl. ¶¶ 13-18; Ghosh Suppl. Decl. ¶¶ 10, 12.  Further, the rates requested in this case are within the range of rates approved in wage and hour litigation in this District.  *See Joh*, 2021 WL 66305, at *8 (collecting cases approving similar rates in wage and hour class actions).  "While the Court need not and does not decide that the exact rates requested by counsel are reasonable, they are at least within the range of reasonableness required to use the lodestar figure as a cross check."  *DiMercurio*, 2024 WL 2113857, at *10.

As noted, Class Counsel also submitted detailed billing records describing the work performed in this action.  Ghosh Suppl. Decl., Ex. 2.  Upon review, the reported hours spent litigating this case are not plainly unreasonable.

Finally, the requested award of $367,500.00 is approximately 87 percent of the reported $421,80.00 fees.  "A negative multiple strongly suggests the reasonableness of a negotiated fee."  *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (cleaned up); *DiMercurio*, 2024 WL 2113857, at *10 (same).  The lodestar cross-check thus supports the fee award here.

### c. Summary

In sum, both the percentage-of-recovery and the lodestar analyses support the requested fee award of $367,500.

### 2. Costs

#### a. Litigation Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros*, 303 F.R.D. at 375 (internal quotation marks and citation omitted).  Plaintiff requests $11,870.29 in costs.  Ghosh Decl. ¶ 20 & Ex. B.   These costs are all well documented and reasonable.  *See Ramirez v. Trans Union, LLC*, 2022 WL 17722395, at *11 (N.D. Cal. Dec. 15, 2022) (approving $299,276.10 in litigation costs); *Dixon*, 2022 WL 1189883, at *12 (approving $60,000 in litigation costs).  They are also lower than the maximum amount of $27,000 allocated toward reimbursement of litigation costs and expenses under the Settlement Agreement.  Accordingly, the Court awards $11,870.29 in costs.

21

### b.    Settlement Administration Costs

Plaintiff also requests that the Settlement Administrative costs be paid out of the Settlement Amount.  According to the administrator, these costs are $11,000.  Castro Suppl. Decl. ¶ 16.  Courts regularly award administrative costs associated with providing notice to the class. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015); *Ramirez*, 2022 WL 17722395, at *11.  The Court therefore concludes that the Settlement Administrator's costs were reasonably incurred for the benefit of the class and approves the full amount to be deducted from the Settlement Amount.

### 3.    Service/Incentive Award

Service or "[i]ncentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958 (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one").  However, the decision to approve such an award is a matter within the Court's discretion.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.  Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted).  Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and

United States District Court
Northern District of California

22

effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Further, district courts must evaluate each incentive award individually.  *See Staton*, 327 F.3d at 977.

Plaintiff seeks an incentive award of $7,500, stating this payment is fair and appropriate because he spent a substantial amount of time and effort producing relevant documents and past employment records, as well as providing the facts and evidence necessary to attempt to prove the allegations.  Koeppen Decl. ¶¶ 3-5, ECF No. 57-1.  Plaintiff further states he was available whenever Class Counsel needed him and actively tried to obtain, and gave, information that would facilitate the pursuit of class claims, and he spent numerous hours speaking with Class Counsel about his claims, describing his work experiences with Defendant, and gathering and reviewing documents.  *Id.* ¶¶ 2-6.  Plaintiff also notes the payment amount was disclosed in the Class Notice that was mailed to the Class Members and no objections were made.

The Court is satisfied that Plaintiff's individual contribution to this case warrants a service award.  However, the requested amount exceeds the amount deemed presumptively reasonable in the Ninth Circuit.  *See Lopez v. Bank of Am., N.A.*, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015) (noting that service awards of $5,000 are presumptively reasonable in the Ninth Circuit) (citing *Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases)).  A large service award can suggest that a plaintiff's financial interest in seeking a settlement does not align with interests of the absent class members because the plaintiff was "more concerned with maximizing [his own gain] than with judging the adequacy of the settlement as it applies to class members at large." *See Staton*, 327 F.3d at 977.  Thus, courts must weigh the proportionality between the incentive payment and the range of class members'

settlement awards when considering whether a requested incentive award is reasonable.  *See Lopez*, 2015 WL 5064085, at *8 (collecting cases).  An incentive award of $7,500 is over 17 times greater than the average expected class member award of approximately $423.  This discrepancy weighs against the requested incentive award here.  *See Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019), *aff'd*, 833 F. App'x 59 (9th Cir. 2020) (finding $10,000 service award unreasonable where it was 4.1 times greater than the average class member award and instead awarding presumptively reasonable award of $5,000); *Vigil v. Hyatt Corp.*, 2024 WL 2137640, at *11 (N.D. Cal. May 13, 2024) (lowering incentive award to $5,000 where proposed $10,000 incentive award was over 15 times the amount the average claimant was projected to recover).

Second, given that this case settled an early stage, Plaintiff did not need to play a particularly active role in the litigation.  Courts must consider a plaintiff's role in the litigation when assessing the reasonableness of an incentive award.  *See Wilson*, 2019 WL 2929988, at *15.  Here, Plaintiff attests he spent 48 hours on this case, including 9 hours of investigation on his own; 8 hours consulting with the attorneys at Lawyers for Justice, PC and discussing his situation; 14 hours communicating with his attorneys regarding the case and fulfilling his responsibilities as a named plaintiff and class representative; 12 additional hours speaking with his attorneys about the case, including identifying potential witnesses, providing them with documents and information concerning the case, and describing Defendant's policies, practices, and procedures; 3 hours reviewing the settlement documents; and 2 hours asking questions and discussing the settlement with his attorneys before signing the settlement agreement.  Koeppen Decl. ¶¶ 2-5, ECF No. 57-1.  However, there is no indication Plaintiff was deposed or attended the mediation.  Under these circumstances, the Court finds Plaintiff's generic statements regarding how he assisted the attorneys in the litigation fail to justify the requested $5,000 incentive award.  *See, e.g., Wilson*, 2019 WL 2929988, at *15 (awarding $5,000 instead of $10,000 where plaintiffs spent between 75-90 hours working on case, but case settled at an early stage and neither was deposed or attended mediation); *Fleury v. Richemont N. Am, Inc.*, 2008 WL 3287154, at *6 (N.D. Cal. Aug. 6, 2008) (awarding $5,000 incentive award where plaintiff was involved in litigation for three years, sat for

United States District Court
Northern District of California

a deposition, responded to written discovery, and attended a mediation session); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at \*6 (N.D. Cal. Aug. 2, 2013) (awarding $5,000, rather than requested $10,000, where the named plaintiff "was deposed twice, attended three settlement conferences, and spent a total of 80 hours" on the case).

At the same time, in addition to the claims being released by other class members, Plaintiff agreed to "release and forever discharge the Released Parties, to the fullest extent permitted by law, of and from any and all claims, known and unknown, asserted and not asserted, which Plaintiff has or may have against the Released Parties as of the date of execution of this Settlement Agreement." Settlement Agreement ¶ 62. Thus, the scope of Plaintiff's release as class representative exceeds that of other Class Members.

Accordingly, the Court concludes that a service award of $5,000 is reasonable. This award reflects the amount deemed presumptively reasonable in this Circuit and recognizes Plaintiff's release of any and all known and unknown claims against Defendant. *See Dixon*, 2022 WL 1189883, at \*13 (reducing service award from $10,000 to $5,000 where named plaintiffs' release as class representatives exceeded that of other class members); *De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at \*20 (N.D. Cal. Mar. 31, 2020) (same).

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval of the parties' class action settlement in the amount of $1,050,000.00. The Court **GRANTS** Plaintiff's motion for attorney's fees and costs; specifically, the Court awards the following: $367,500 in attorney's fees; $11,870.29 in litigation costs; $11,000 in settlement administration costs; and a $5,000 service award to Plaintiff Ronell Koeppen.

The parties shall file a proposed judgment that complies with Federal Rule of Civil Procedure 23(c)(3) by August 29, 2024.

**Post-Distribution Accounting**

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, within 21 days after the distribution of the settlement funds and payment of attorneys' fees, Class Counsel shall file "a Post-Distribution Accounting" that provides the following, to the

1    extent applicable:

2           The total settlement fund, the total number of class members, the total
            number of class members to whom notice was sent and not returned
3           as undeliverable, the number and percentage of claim forms
            submitted, the number and percentage of opt-outs, the number and
4           percentage of objections, the average and median recovery per
            claimant, the largest and smallest amounts paid to class members, the
5           method(s) of notice and the method(s) of payment to class members,
            the number and value of checks not cashed, the amounts distributed
6           to each cy pres recipient, the administrative costs, the attorneys' fees
            and costs, the attorneys' fees in terms of percentage of the settlement
7           fund, and the multiplier, if any.

8    https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.  Class

9    Counsel shall "summarize this information in an easy-to-read chart that allows for quick

10   comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-

11   read chart, on the settlement website."  *See id.*

12           **IT IS SO ORDERED.**

13

14   Dated: August 22, 2024

15

16                                                    THOMAS S. HIXSON
                                                      United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28